May it please the Court. I'm John Carroll and I represent Sergio Munoz and his personally owned law firm, the Appellants in this case. We are here with two general areas of complaint about the entry of a devastating $3 million judgment in a legal malpractice lawsuit that was in federal court on diversity, Your Honor. Our first complaint is the decision by the district court to impose a death penalty sanction striking the pleadings of Mr. Munoz, which resulted in the entry of a default judgment, which then led to, after an evidentiary hearing, the entry of the $3 million judgment. Well, as I understand it, there was a motion to strike the pleadings, but Mr. Munoz did not oppose that or enter any opposition to it. Your Honor, you are correct that no response was filed to the motion for sanctions. The motion for sanctions, it was filed by the defendants, or rather the plaintiffs rather, in October of 2016, and there were other matters going on, but a response to that motion was not filed. The plaintiff has asserted that because of that, we have waived that complaint. And our complaint, Your Honor, is that the court utilized the incorrect legal standard in deciding to impose a death penalty sanction. This court's decisions clearly state that in imposing a death penalty sanction such as entry of a default judgment or striking pleadings, that the court must find that the penalized party's discovery violation was willful, and second, in addition to willfulness, there must be a finding that the drastic measure to be employed is only to be used where a lesser sanction would not substantially achieve the desired  on sanctions, Your Honor, the court specifically stated that it was not required to find willfulness. The court cited factors for general Rule 37B sanctions without citing the Connor factors that are well cited in the decisions of this court, Your Honor, including willfulness and that a lesser sanction would not achieve the justified result. And that's the problem we have, Your Honor, and I understand the court's question, did the — in the trial court, did the defendant file a response to this motion? The answer is no. What does that waive? Your Honor, we would assert that it does not waive a failure by the trial court to correctly apply the law. In this case, the trial court misapplied the law in deciding that a death penalty sanction, striking pleadings, should be utilized without actually going through and reviewing the factors that the court should review before imposing such a sanction. And for that reason, Your Honor, we believe there is error and it is not waived. The specific standard of review that we've applied, and that the court applies, rather, is abuse of discretion. And as the Court knows, a district court abuses its discretion when its ruling is based on an erroneous view of the law. And in this case, Your Honor, it's our point that in failing to utilize the specific legal standard for the imposition of a death penalty sanction, the honorable district court misapplied the law and imposed a sanction without reference to the correct legal standard. And because, obviously, a death penalty sanction is so serious, taking away a party's defense, it should be done very carefully. So, our complaint is that the district court misapplied the law, and we believe that that is not something you waive even by failing to file a response to a motion. Allow me to give an example, Your Honor. In a default judgment context, a party fails to answer and does not have an excuse for their failure to answer. The district court must still go through the record and make sure that the plaintiff's brought forth a basis for a de-entry of a judgment before the court could enter judgment. And a losing party in such a case would have a right to appeal if the court misapplied the law and improperly opposed a default judgment. Another thing that's important in this case, Your Honor, that the court pointed — that the district court pointed out was that it was not required to utilize the death penalty sanction standard because it was only striking pleadings, and after striking the pleadings, the court would have to take additional steps to enter a default judgment, finding that that was appropriate. And therefore, the district court took the position that it was not a death penalty sanction. We have cited in our brief a number of cases from this Court finding that an order striking pleadings does constitute a death penalty sanction. So it's our contention, Your Honors, that the issue was not waived, and specifically the issue of the court's application of the law. That was not waived, and when the court entered an order imposing a death penalty sanction without utilizing and applying this Court's standards under the Connor factors for the defendant to commit an error of law by misapplying the law. And the effect of that was obviously a devastating order striking a party's pleadings which caused harm to the defendant. And we are requesting that the court vacate the judgment and remand this case to the trial court for additional proceedings. Now, in addition to the issue of the sanctions order, Your Honor, the other area of complaint that we've made in this case is as to the damages finding. And our concern, again, is primarily a failure to correctly apply the law. As the Court knows, this is a diversity case. We're on Texas state law of legal malpractice. And in this case, in Texas legal malpractice, the measure of damages is the amount of damages recoverable and collectible if the suit had been properly prosecuted. So that's what a plaintiff can get in a Texas legal malpractice case. And that's Elizondo v. Chris, Texas Supreme Court case we've cited in our brief. Your argument is that some of those fees would have been incurred anyway but for any malpractice. Is that right? Yes, Your Honor. Because what the court did, instead of making that finding, instead of the court asking the question, what was the amount of damages recoverable and collectible? The court instead awarded all the reasonable and necessary attorney's fees incurred by plaintiff to collect what was owed, which is some $1.7 million. And the evidence at the hearing on damages, Your Honors, included testimony of attorney's fees incurred throughout years of litigation in this matter before Mr. Munoz even showed up on the scene. Now, that is not something that is recoverable under Texas law. The plaintiff in the court below may argue that, well, this is an unusual circumstance because the malpractice we complain of resulted in, in the trial court, in the underlying lawsuit, a disqualification of the judge, which voided his prior acts. Well, that still doesn't justify awarding them all the attorney's fees they had incurred in order to get to the point where they believed they could recover damages. In this case, in addition to that $1.7 million in attorney's fees that they had incurred, the court also awarded to the plaintiff $1.2 million in what they asserted were reasonable, recoverable amounts, recoverable amounts from their investment. So that is the question of what are your damages, what did you think you could have recovered in the underlying lawsuit, and that was the number of $1.2 million. The third factor was $21,000 in fees actually paid to Mr. Munoz, so a fee forfeiture to Mr. Munoz of about $21,000, which included fees that were incurred in unrelated federal court litigation, unrelated to the lawsuit that gave rise to the malpractice lawsuit. Now, here's why that's error for many reasons. One, it doesn't follow the Elizondo v. Chris standard, what was recoverable and collectible if the lawyer had done his job correctly. That's the standard, and that wasn't followed by the court. Second, you end up with double counting. If I'm the plaintiff and I say I had to spend $1.7 million to recover $1.2 million, well, I don't get my $1.7 million plus my $1.2 million. If I had to spend $1.7 million to recover $1.2 million, that $1.7 million is on me. So the $1.7 million is what got them to the point where they argued that they could recover the $1.2 million. We have issues with the sufficiency evidence of that as well, but let's just stick with this point. Now, if it cost them $1.7 million to get in position to recover $1.2 million, and then the malpractice of a lawyer prevents them from getting the $1.2 million, what are they out? They're out $1.2 million. That's what they've lost. They haven't lost the $1.7 million that they would have spent anyway. It's not a proper measure of recoverable damages in a Texas malpractice, attorney malpractice lawsuit, and the court should not have awarded it. Now, in the trial court's judgment on damages, the final judgment, it's a very short two-paragraph order stating that the court awards the plaintiff $2.988 million, almost $3 million. It doesn't include Rule 52 findings. Where did the $2,988,000 come from? So we objected to the lack of findings in the judgment. Now, and I think that's important because we are making very specific complaints about the court's damage award and asking the court to grant us relief in this appeal based on the court's damage award. And so you might ask, well, how can we decide that if we don't have Rule 52 findings? And maybe the court needs to vacate the judgment and send it back. However, under this court's decisions, cited in our brief, if it's evident to the court what the damage award was, what the basis of the judgment was, the court can go forward without findings. And I believe in this case, with the three numbers, the reasonable necessary attorney's fees of $1.7 million, the $1.2 million in amounts they claim they could have recovered, and the $21,000, it clearly adds up to the $2.988 million total. So we believe the court can go forward and assess our complaints about the judgment amount. And we would also point out, Your Honor, one of the complaints we made within the damages issue was it was error to award attorney's fees at all because you can't recover attorney's fees in Texas in a lawsuit unless there's a statute that says you can get them or a contract. Now, the plaintiff in the court below comes back and says, well, that was part of our losses. There's this Aiken-Gump case out of the Texas Supreme Court that says if it's part of our losses, we can recover it. I agree and we understand that, and that's the tort of another point that we cited in our brief, the idea being if I'm a malpractice plaintiff and the lawyer made a mistake and that caused me to go spend another $50,000 in legal fees, well, that could be part of my damages, but all my legal fees that I ever spent in this case before I ever met that lawyer is not a proper measure of the damages. So in other words, if a lawyer should have gotten a summary judgment, and any competent lawyer could have gotten that summary judgment, but because of some mistake, the lawyer failed to do it and you had to pay another $25,000 to go through trial, well, that could be damages, because you wouldn't have incurred that but for the lawyer's negligence. But here we don't have that. We have the plaintiff in the court below saying we spent almost $2 million in legal fees, and so we should get that from him as well. And so, Your Honor, with that, I will reserve the balance of my time unless the Court has any other questions. You've saved time for rebuttal. Thank you, Your Honor. Thank you. All right. I'm going to let you pronounce your name, because I'm sure to mess it up, so do us a favor. Thank you, Your Honor. May it please the Court, Michael Smikin from Allegheny, on behalf of the appellee. Your Honor, the appellants began their argument by talking about a devastating judgment. The devastation actually began much more earlier than that, and that was with the appeal of the appellee's client, Mr. Munoz, and his law firm. My client, as a result of those acts, was damaged to the tune of many millions of dollars. It was not $1.2 million, it was not $1.7 million for the attorney's fees that they had to spend, but it was many millions of dollars that they were entitled to based on the agreements that they had and how the money was to be collected. The appellant here has created a false image of what happened in the case below. That's been done with selective representations, omissions of the critical parts of the record, which have to be considered in the whole with what happened during this case. That's why we have an adversarial system, so it's your job to fill in the gaps. Your Honor, we have eight issues that are raised by the appellant, and each one of those, Your Honor, forms some amalgamation of selective omission and misrepresentation of what happened below. Your Honor, I want to start with the issue of waiver, because that's just one of the issues that we have here. The appellant below violated, at minimum, three court orders from two different district court judges, Judge Crane and Judge Alvarez. He failed to appear twice, once even after being ordered to show cause why he failed to appear. He was sanctioned with monetary damages twice for failure to appear and failure to respond. He failed to produce documents subject to a request for production of documents. He failed to answer requests for admissions, and the court again sanctioned him for his failure to answer requests for admissions. A motion for sanction was filed, which the appellant didn't even bother to respond to, and then a motion for default judgment, separate and distinct from the motion for sanctions, was filed. Again, the appellant never even bothered to respond to those motions. Your Honor, what the factual record shows is an attorney, that's what the defendant is, he's an attorney, licensed to practice in the state of Texas, who knew exactly what was going to happen when his day in court occurred. And rather than respond to discovery, rather than do the things that he was required to do, he engaged in gamesmanship on the hopes that his feet would not be held to the fire, and boy were they. So to create this fiction about what Judge Alvarez did below, related to the steps needed to be taken that brought you from monetary sanctions to forcing admissions or granting a request for admissions, to then a motion for sanctions striking his answer, to then ultimately the court, not as a sanction, not as a sanction, entering default judgment against the appellant. Your Honor, the question of waiver here is the fact that the appellant is attempting to circumvent the fact that he never raised any substantive issues with the court's entry of the motion for sanctions, which ultimately struck the entry of the default judgment, and then after a bench trial was held, then brought a new counsel who attempted to backdoor in these exact arguments through a 60B motion and a Rule 59 motion. So, Your Honor, on Issues 1, which is the issue of the incorrect standard, with regard to Issues 3, 4, 5, and 6, which all address the issue of damages, there is unmistakably, unequivocally a waiver of any of those rights to appeal. Your Honor, even if that were not the case here, one of the issues that counsel raised was an incorrect standard that was applied by Judge Alvarez. If you read the motion for sanctions and the order that flowed from it, the cases the judge cited to were not related to the entry of default judgment. They were related solely to whether or not to sanction. So the determination of the type of sanction is a separate decision that has to be made. The citation to cases like Garza and Vic Air that the court cited to was actually in relation to whether or not I, the judge, should sanction under these circumstances. Once the court made that determination, in its order, which is attached to our record on appeal, the court then laid out all of the factual predicates necessary to award the sanction that she ultimately entered into, her Honor ultimately entered into, which was the striking of the answer. In the Rule 60B motion, again, after the trial, appellant again challenged that determination and said, you raised the wrong law. You entered default judgment against me as a sanction. Here's a whole boatload of cases where it says you have to engage in this type of analysis and enter into these types of factors when you're entering default judgment. Judge Alvarez clearly explains, I didn't enter default judgment against you as a sanction. And it's true. There's a motion for sanctions where the judge struck the appellant's answer. Then a separate motion to enter default judgment is filed by the plaintiff in that case, which, again, the appellant never even responded to, where the court then entered default judgment. The court in that 60B motion went on to explain, even if, even if the sanction could be construed as a motion to strike, as a striking of the answer and default judgment, then the most appropriate case on point is a case called Plastic Source, which the court cited in its papers and said, under the requirements under Plastic Source, all of the requirements are met based on the factual record that's included in the motion for sanctions. And so the court set out and explained all of the necessary elements that needed to be met. Notwithstanding that explanation, the appellant is standing again in front of you making the exact same arguments and citing to the exact same cases. But those cases, EEOC, which is cited in the appellant's papers, and Doe, which are cited in the appellant's papers, are cases where a plaintiff's complaint is dismissed with prejudice, as opposed to the situation we have here, which is the sanction was a striking of the pleadings and nothing further. A separate motion was filed for default judgment, which, again, was not opposed. But notwithstanding all of that, Judge Alvarez explained, even if that is the appropriate standard, read my motion for sanctions, I laid out all the factual predicates, three orders that were ignored, two hearings not appeared for, monetary sanctions, admissions entered into, no responses to requests for production of documents, no responses to requests for admissions. And so willfulness, the fact that a lesser sanction wouldn't promote the result, are all established, and Judge Alvarez explains it in the Rule 60b motion. But she also lays out all the factual predicates in her motion for sanctions. The appellant also argues that there's a potential violation of the Federal Rule of Civil Procedure 52. It was unclear as I stood here today. It appears that they may be withdrawing that argument. I don't know. But just for the purposes of clarity, again, we're dealing with a selective representation and selective citation to the actual record. If Your Honors were to review the judgment, which in the record is page 548, Judge Alvarez specifically in a footnote cites a document number, incorporates by reference a docket number, and that's docket number 63. In the first sentence, first footnote, incorporates that docket number. That filing was the judge's order on default judgment. That default judgment is a six-page document laying out all of the factual predicates, all of the legal bases that it arrived at why the plaintiff was entitled to the relief that they were seeking, including a discussion of duty, including a discussion of breach, including a discussion of causation, including a discussion that the plaintiff was actually damaged by the appellant's actions. The court then went through each one of the facts and applied it to the law in showing why the plaintiff was entitled to the relief that was being sought. So for the appellant to stand before Your Honors and to say the court didn't provide a factual basis or a legal basis for the conclusions that the court reached related to the judgment is disingenuous at best. I've rarely seen a judgment that was six pages or incorporated a document that so clearly explained how the court arrived at all of its conclusions after a bench trial. And so, Your Honors, I will also say that in the appellant's papers, they clearly indicate even though the judge doesn't specifically state in the judgment how the $2.98 million figure is arrived at by Judge Alvarez, we can clearly see, this is the appellant's words, right, I'm paraphrasing, we can clearly see that that number is a calculation from the expert's report of the three figures that the court found were the damages. At the hearing, the expert was specifically asked, what are the damages in this case? And he said, one, two, and three. And Judge Alvarez, in her order related to the 60B motion, explains exactly where those numbers arrived at. It's footnote 101, and in the records, Your Honors, it's page 823. So to stand before Your Honors and say the judge didn't fulfill her obligations, her Honor's obligations under Rule 52, is, again, disingenuous. With regard to the issue of damages, the briefing from appellant was inscrutable to certain degrees because the issues were kind of dissected in a certain way to create a false light as to what the actual damages issues were and how the court resolved it. Isn't it the case that some of those fees, a good portion of those fees, would have been incurred anyway, even absent any malpractice? No, Your Honors, because here's what actually happened. There was a receivership that was created, of which Mr. Munoz was not an attorney for. He represented one party, and that was the law funder. There was a receivership that was created by Judge Contreras with the sole purpose of going out and collecting monies that were owed by multiple law firms and to have those monies deposited into the Texas court registry for which anybody who had a legitimate claim against those monies can assert those claims. What happened was when Mr. Munoz joined the lawsuit and it was discovered that he had the secret partnership, or maybe it was out in the open, but nobody knew about it. When Mr. Munoz joined the lawsuit, somebody had discovered his partnership with Judge Contreras, had Judge Contreras disqualified, and had reversed years of litigation up until that point in time. As a result of that, as a result of that action, all of the attorney's fees that were spent up until that point were wasted in the litigation. And the one party that could fund the entire lawsuit, law funder, was devastated by that determination and is now, Your Honors, in liquidation. They are not doing business anymore. They are collecting out monies, trying to pay investors, and they are in liquidation as a result of that. So Mr. Munoz's argument is, well, that's not my fault. I didn't cause that to happen. But Aiken Gump, the case that we rely on, and actually quite interestingly, Elizondo, the case that appellants cite to, it clearly explained that attorney's fees, any attorney's fees that are lost as a result, as a proximate cause of the actions of a party engaging in legal malpractice are recoverable in the lawsuit. But that kind of begs the question of whether it's a proximate cause. Assuming that's the legal standard, that's fine. But have you shown that this is the proximate cause? Absolutely, Your Honor. And it's not for the plaintiff to have shown. It is actually the conclusion of Judge Alvarez that the plaintiff was the proximate cause of all of those damages. In the default judgment motion, Judge Alvarez explains exactly how the actions of Mr. Munoz and the misconduct of Mr. Munoz caused the specific damages that law under complains about. And I can bring Your Honors to that page specifically in the record. Your Honors, that is in the record. It's pages 491 and 492. And specifically, the court says, plaintiff sufficiently pleads proximate causation. The defendants were aware that this relationship would create a conflict of interest and defendants were further aware that this relationship could lead to disqualification of Judge Contreras. Indeed, any reasonable person in defendant's position would know that failing to disclose or withdraw from the conflict in question could lead to disqualification of Judge Contreras, nullification of all of his orders, and the consequent waste of plaintiff's time and paid attorney's fees. So although plaintiffs allege that, it was Judge Alvarez who came to that conclusion. Well, but Judge Alvarez came to that conclusion after preventing cross-examination on how much harm was actually caused by any negligence on the part of Mr. Munoz. And, Your Honor, I will say that Judge Alvarez did not do that. What Judge Alvarez actually did was limit cross-examination on the question of causation, which was already established. The judge never said that Mr. Munoz could not question the witnesses about the actual amount of the damages that were being caused. The default judgment had been entered. Causation had been found by admission. But if you read the entire transcript, and there's no specific citation to anything in the appellant's records related to that, but if you read how the limitations actually occurred, you'll see that the court only limited the question of what were they the cause. And specifically in our brief, Your Honor, I think we cited to the specific page numbers, but certainly we have reference in here from the statements of Mr. Munoz's attorney where he specifically says when the judge asks him what's the basis of the questioning, he says, oh, he didn't cause those damages. But in the default judgment and the determination of the court based on the facts at issue, the court had already determined that he had caused those damages, that Mr. Munoz's involvement led to the disqualification of Judge Contreras, which caused a complete reversal and a waste of all the monies that were expended by the law funder. In addition to that, Your Honors, there's some discussion, or at least some frame that's being created that law funders spent $1.7 million to recover $1.2 million, and that's not true. Law funder had paid, in principle, $1.2 million to attorneys to purchase their right to a contingent interest in litigations. When those monies were supposed to come through, they would have went into the Texas courts registry and law funder would have been entitled to not only the $1.2 million that was expended to purchase this contingent interest, but also money pursuant to a specific schedule. Given the timing of what happened, law funder was already on its way collecting those monies. In fact, in Mr. Munoz's papers, he indicates that he successfully recovered over $400,000 The truth of it was, the receivers were successful in recovering those monies. Mr. Munoz was just law funder's attorney at the time. But money was already coming through the registry to law funder as a result of all the monies that were being expended. So it wasn't $1.7 million of attorney's fees to collect $1.2 million. It was $1.7 million to bring themselves into a position where they can begin to recover all of the money that they were entitled to under their agreements. The problem was, when the disqualification occurred, they were still in the process of collecting out these monies. And so what ultimately the only damage award, non-speculative damage figure, law funder can actually explain was, they were out $1.2 million in principle. The ultimate recoveries, or what would have happened in every one of these litigations, law funder couldn't establish. But what they could establish through testimony and the trial record is that many attorneys had already deposited their monies into the Texas court registry. Law funder had already covered in excess of $400,000 on his monies. And another attorney, the one who actually filed the motion to disqualify Mr. Munoz, was fighting vigorously because he was sitting on $1.2 million, over $1.2 million, in his accounts from attorney's fees that he acquired, which law funder would have had a claim against. So once he figured out Mr. Munoz had this partnership with Judge Contreras, he filed the motion to disqualify Judge Contreras. He got Judge Contreras disqualified. And all of the work that was leading up to our ability, meaning law funders, to collect out these monies was nullified. And so it wasn't $1.7 million to acquire $1.2 million. With regard to—and, Your Honor, as I say, I have about 30 seconds left. Can I briefly sum up, unless there's any other questions? It's your 30 seconds. Thank you, Your Honors. So we start with the question of waiver. And in this situation, there was a motion for sanctions, unopposed, a motion for default judgment that was not a sanction, unopposed. And so now on Issues 1, 3, 4, 5, and 6, all of those, those are waived. With regard to the issues on Rule 52, Your Honors, we think the record is quite clear on those issues. Your Honors, I see I'm out of time.  Thank you, Your Honor. Mr. Carroll, you've saved time for rebuttal. Thank you, Your Honor. A lot of that was argument and really isn't borne out by the record because it wasn't fleshed out because there was the striking of pleadings, et cetera. The fact is that when the trial judge entered her order post-judgment on the Rule 60 and Rule 59 motions, she again said, I don't have to consider these counterfactors because I didn't do a death penalty sanction. All I did was strike your pleadings. The simple fact is that's not an appropriate distinction for the court to make because this court's decisions make it clear that if you strike a party's pleadings, that brings up, that's death penalty sanctions, brings up the counterfactors. Oh, well, the other side argues that Mr. Munoz did bad things and acted inappropriately. Well, if that's the case, then let's judge him on the counterfactors. Let's judge him on the appropriate factors. Let's apply the law to him. Let's not just act without appropriate guidelines. When was the first time you mentioned, if at all, the counterfactors? That was post-judgment, Your Honor. So in post-judgment pleadings, we raised an issue that the court should have applied the counterfactors. So they were not raised before, Your Honor. With respect to the damages, again, there was a failure to follow the Elizondo v. Chris standard. What would the plaintiff have recovered but for the lawyer's alleged negligence? That's the standard. Instead, we've got this recovery of this $1.7 million. I still don't understand the plaintiff's claim. I'd like to try the whole case because I'd like to look at the whole legality of non-lawyers  But that's an issue for another day, maybe. The fact is that the court did not look at those proper standards and, for example, did not give credit to Mr. Munoz for the $418,000 that was recovered in an order on his watch. That was funds that were recovered by the plaintiff, and no credit was given to Mr. Munoz for that. And with respect to the cross-examination issue that we raised, Your Honor, the court said, no, I've already found he was damaged. Now the question is, what are the damages? And so I'm not going to let you challenge a specific part of the damages. It's all coming in. So what the trial counsel was trying to do was cross-examine the witnesses as to when fees had been incurred with respect to the appearance of Mr. Munoz in the case and events taking place in the case, and the court said, no, I'm not going to allow that. I've already decided that they were damaged. The question now is, what's the amount? And so we assert that that was an improper limitation on cross-examination, and it really just fits in with the Court's error in failing to apply the Elizondo v. Chris standard. And so we thank the court for its time, and our complaint is the failure of the district court to follow the proper legal standards in this case. All right, thank you, Mr. Carroll. Case is under submission. Last case.